UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- X

WHEELY USA, INC.,
MAYFAIR-NY LLC, and
KENSINGTON-NY LLC,

                                 Plaintiffs,                  1:26-cv-01057-CM

                 - against -

THE CITY OF NEW YORK,                              ECF Case

                                 Defendant.

----------------------------------------------------------------------- X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF

**STEVEN BANKS**
Corporation Counsel of the
City of New York
*Attorney for Defendant*
100 Church Street,
New York, New York 10007
Tel: (212) 356-2212

MICHELLE GOLDBERG-CAHN
KAREN SELVIN
GENAN F. ZILKHA
GREGORY B. OBRIEN
           Of Counsel,
March 23, 2026

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF RELEVANT FACTS ............................................................................ 3

     I.     THE NEW YORK CITY TAXI AND LIMOUSINE COMMISSION ............................................................................................ 3

     II.    TLC'S HISTORY OF DATA REPORTING ............................................ 3

ARGUMENT ....................................................................................................................... 6

     I.     THERE IS NO JUSTICIABLE CONTROVERSY AND PLAINTIFFS LACK STANDING ........................................................... 6

     II.    PLAINTIFFS CANNOT ESTABLISH FOURTH AMENDMENT VIOLATION ................................................................ 7

          A.    Plaintiffs Have No Expectation of Privacy as the FHV Industry is Highly Regulated ........................................ 7

          B.    There is no Expectation of Privacy over the Location and Movement of Vehicles on a Public Road ............................................................................................... 11

          C.    Wheely's Privacy Policy and Terms and Conditions Allow it to Collect and Disclose Data to Regulatory Agencies ............................................................ 12

          D.    Under the Third-Party Doctrine there is no Expectation of Privacy ......................................................... 13

          E.    The Challenged Rules are Reasonable .............................. 15

     III.   THE STORED COMMUNICATIONS ACT DOES NOT PREEMPT THE CHALLENGED RULES ........................................... 17

     IV.   PLAINTIFFS CANNOT ESTABLISH VIOLATION OF FIRST AMENDMENT ................................................................... 20

          A.    The Challenged Rules Do Not Implicate the First Amendment ........................................................................ 21

B. Assuming *Arguendo* the Challenged Reporting Requirement Compels Speech, it is Rationally Related to the Goals Underlying Their Adoption .............................. 22

V. PLAINTIFFS CANNOT SHOW IRREPARABLE HARM ........................................................................................24

CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**            **Pages**

Airbnb, Inc. v. City of N.Y.,
  373 F. Supp. 3d 467 (S.D.N.Y. 2019)......................................................................9, 15, 16, 20

Alexandre v. N.Y.C. Taxi & Limousine Comm'n,
  No. 07 Civ. 8175 (RMB), 2007 U.S. Dist. LEXIS 73642
  (S.D.N.Y. Sep. 28, 2007) .........................................................................................11, 12

Algood Casters, Ltd. v. Caster Concepts, Inc.,
  No. 20 Civ. 4623 (LJL), 2020 U.S. Dist. LEXIS 162532
  (S.D.N.Y. Sep. 4, 2020) ...........................................................................................25

Almontaser v. N.Y.C. Dep't of Educ.,
  2007 Civ. 10444 (SHS), 2009 U.S. Dist. LEXIS 84696 (S.D.N.Y. Sep. 1,
  2009) ........................................................................................................................20

In re Application of the United States for an
  Order Pursuant to 18 U.S.C. 2705(b),
  289 F. Supp. 3d 201 (D.D.C. 2018).........................................................................18

Azam v. D.C. Taxicab Comm'n,
  46 F. Supp. 3d 38 (D.D.C. 2014) ............................................................................14

B & L Prods., Inc. v. Newsom,
  104 F.4th 108 (9th Cir. 2024) ..................................................................................21

Buliga v. N.Y.C. Taxi Limousine Comm'n,
  No. 07 Civ. 6507 (DLC), 2007 U.S. Dist. LEXIS 94024
  (S.D.N.Y. Dec. 21, 2007)
  (aff'd 324 F. App'x 82, 82 (2d Cir. 2009))...............................................................8, 11

Carpenter v. United States,
  585 U.S. 296 (2018)..................................................................................................13

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of N. Y.,
  447 U.S. 557 (1980)..................................................................................................22, 23

City of Los Angeles. v. Patel,
  576 U.S. 409 (2015)..................................................................................................8

Crispin v. Christian Audigier, Inc.,
  717 F. Supp. 2d 965 (C.D. Cal. 2010) .....................................................................19

Donohue v. Mangano,
  886 F. Supp. 2d 126 (E.D.N.Y. 2012) .....................................................................24

**Cases**                                                                  **Pages**

DoorDash, Inc. v. City of New York,
789 F. Supp. 3d 337 (S.D.N.Y. 2025)................................................................24

El Nahal v. Yassky,
993 F. Supp. 2d 460 (S.D.N.Y. 2014)
(aff'd on other grounds 835 F.3d 248 (2d Cir. 2016)) ........................................8

Envtl. Encapsulating Corp. v. New York,
855 F.2d 48 (2d Cir. 1988)...............................................................................18

Florida Bar v. Went For It, Inc.,
515 U.S. 618 (1995).........................................................................................22

Freedman v. Am. Online, Inc.,
303 F. Supp. 2d 121 (D. Conn. 2004)...............................................................19

Gallagher v. N.Y. State Bd. of Elections,
477 F. Supp. 3d 19 (S.D.N.Y. 2020).................................................................25

Giboney v. Empire Storage & Ice Co.,
336 U.S. 490 (1949).........................................................................................22

Helios & Matheson N. Am., Inc. v. Vegasoft Oy,
07 Civ. 3600 (PAC), 2007 U.S. Dist. LEXIS 38206 (S.D.N.Y. May 24, 2007) ....................24

Hershey v. Goldstein,
938 F. Supp. 2d 491 (S.D.N.Y. 2013)...............................................................17

HomeAway.com v. City of Santa Monica,
918 F.3d 676 (9th Cir. 2018) ...........................................................................21

Horton v. California,
496 U.S. 128 (1990)...........................................................................................7

Hudson Shore Assocs. Ltd. P'ship v. New York,
139 F.4th 99 (2d Cir. 2025) ........................................................................... 7-8

Jones v. Rath Packing Co.,
430 U.S. 519 (1977).........................................................................................18

Katz v. United States,
389 U.S. 347 (1967)...........................................................................................7

Kurtz v. Verizon N.Y., Inc.,
758 F.3d 506 (2d Cir. 2014)..............................................................................6

**Cases**                                                                                              **Pages**

Lewis v. Thompson,
    252 F.3d 567 (2d Cir. 2001)........................................................................................23

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992)...................................................................................................7

Metropolitan Life Ins. Co. v. Massachusetts,
    471 U.S. 724 (1985).................................................................................................18

Murphy v. New Milford Zoning Comm'n,
    402 F.3d 342 (2d Cir. 2005)........................................................................................6

Nat'l Elec. Mfrs. Ass'n v. Sorrell,
    272 F.3d 104 (2d Cir. 2001)......................................................................................23

Nat'l Org. for Marriage, Inc. v. Walsh,
    714 F.3d 682 (2d Cir. 2013)........................................................................................6

Patel v. City of L.A.,
    738 F.3d 1058 (9th Cir. 2013)
    (aff'd 576 U.S. 409 (2015)) ........................................................................................9

Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,
    547 U.S. 47 (2006)...................................................................................................21

Sanchez v. L.A. Dep't of Transp.,
    39 F.4th 548 (9th Cir. 2022) ................................................................................13, 14

Smith v. Maryland,
    442 U.S. 735 (1979)...................................................................................................7

Sorrell v. IMS Health Inc.,
    564 U.S. 552 (2011)............................................................................................21, 22

Statharos v. N.Y.C. Taxi & Limousine Comm'n,
    198 F.3d 317 (2d Cir. 1999)..................................................................................... 7-8

Tafuto v. Donald J. Trump for President, Inc.,
    827 F. App'x 112 (2d Cir. 2020) ................................................................................6

Uber Techs., Inc. v. City of Seattle,
    Nos. 25-228, 25-231, 2026 U.S. App. LEXIS 6456
    (9th Cir. Mar. 4, 2026)..............................................................................................22

United States v. Davis,
    109 F.4th 1320 (11th Cir. 2024) ...............................................................................12

**Cases**                                                                                                                    **Pages**

United States v. Hart,
    No. 08-CR-00109-C, 2009 U.S. Dist. LEXIS 72597
    (W.D. Ky. July 28, 2009) ................................................................................................12

United States v. Jones,
    565 U.S. 400 (2012) ........................................................................................................10

United States v. Knotts,
    460 U.S. 276 (1983) ......................................................................................................7, 11

United States v. Miller,
    425 U.S. 435 (1976) ........................................................................................................13

United States v. Salman,
    No. 24 Cr. 00206 (NCM), 2025 U.S. Dist. LEXIS 218278
    (E.D.N.Y. Nov. 5, 2025) ................................................................................................13

United States v. Ulbricht,
    858 F.3d 71 (2d Cir. 2017) ............................................................................................13

Wooley v. Maynard,
    430 U.S. 705 (1977) ........................................................................................................20

In re Yahoo Mail Litig.,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) .............................................................................20

Zauderer v. Office of Disciplinary Counsel,
    471 U.S. 626 (1985) ........................................................................................................23

**Statutes**

35 RCNY § 59A-04-11 ............................................................................................................9

35 RCNY  § 59A-13 ................................................................................................................9

35 RCNY § 59B, et seq. ...........................................................................................................3

35 RCNY  § 59B-12 .................................................................................................................9

35 RCNY  § 59B-15(a) .............................................................................................................9

35 RCNY § 59B-15(b) .........................................................................................................6, 7

35 RCNY  § 59B-18 .................................................................................................................9

35 RCNY § 59B-19(a) .............................................................................1, 4, 11, 12, 15, 18

| **Statutes** | **Pages** |
|---|---|
| 35 RCNY § 59B-26 | 9 |
| 35 R.C.N.Y. § 59B-21(g) | 12 |
| 35 RCNY § 59B-26-31, et seq. | 9 |
| 35 RCNY § 59B-29 | 9 |
| 18 U.S.C. § 2510(15) | 18 |
| 18 U.S.C. §§ 2702-03 | 17 |
| 18 U.S.C. § 2702(a)(3) | 17 |
| 18 U.S.C. § 2711(1)-(2) | 18 |
| New York City Charter § 2300 | 3 |
| New York City Charter § 2303(a) | 3 |
| New York City Charter § 2303(b)(11) | 3 |
| New York Civil Practice Law Article 78 | 8 |
| Rules of the City of New York Title 35 Section 51-03 | 1, 3, 10 |
| 18 U.S.C. § 2702 | 17 |
| 18 U.S.C. § 2702(a),(c) | 17 |
| 18 U.S.C. § 2703 | 17 |
| 18 U.S.C. § 2703(c)(1)(C) | 17 |
| 42 U.S.C. § 1983 | 17 |

**Other Authorities**                                                                   **Pages**

New York State Constitution Article I § 8..................................................................20

New York State Constitution Article I § 12................................................................17

Notice of Promulgation of Rules, *available at,*
   http://nyc.gov/assets/tlc/downloads/pdf/newly_passed_rule_fatigued_driving.
   pdf .......................................................................................................................4

Orin S. Kerr, A User's Guide to the Stored Communications Act, and a
   Legislator's Guide to Amending It, 72 Geo. Wash. L. Rev. 1208, 1215 (2004)) ....................18

Taxi Zones, NYC Open Data, *available at*
   https://data.cityofnewyork.us/Transportation/NYC-Taxi-Zones/8meu-
   9t5y/about_data (last visited Mar. 23, 2026) ........................................................5

<u>**PRELIMINARY STATEMENT**</u>

Plaintiffs MAYFAIR-NY LLC ("Mayfair"), KENSINGTON-NY LLC ("Kensington"), and WHEELY USA, INC. ("Wheely") (collectively "Plaintiffs") are seeking to enjoin enforcement of rules that have been in place since 2014 and 2017 and which they agreed to abide by when they entered the Defendant City of New York's ("Defendant" or "City") For Hire Vehicle ("FHV") market.

Since 1997, For-Hire Bases ("Bases"), which are defined in Section 51-03 of Title 35 of the Rules of the City of New York ("RCNY") as "licensed business[s] for dispatching [FHVs] and the physical location from which [FHVs] are dispatched," have been required to collect and make available to the New York City Taxi & Limousine Commission ("TLC") data about passenger pickup location and time. Ex. 1 at 399-400. In 2014, TLC heard an amendment to 35 RCNY § 59B-19(a) (known as the "FHV Trip Data Rule") requiring that Bases regularly transmit passenger pickup times and locations to TLC.[1] <u>See</u> Ex. 2 at DEF000825. The amendment was adopted by the TLC Commissioners, promulgated and took effect on December 31, 2014. <u>See</u> Ex. 3 at DEF000845. In 2016, TLC heard another amendment to 35 RCNY § 59B-19(a) (known as the "Fatigued Driver Rule") that added the requirement that passenger drop-off locations and times be transmitted to TLC. <u>See</u> Ex. 4 at DEF000856. This amendment was adopted and took effect on March 15, 2017. <u>See</u> Ex. 5 at DEF000896. Neither of these amendments have been challenged until Plaintiffs commenced this action in 2026.

Although certain data transmitted to TLC under 35 RCNY § 59B-19(a) is released to the public on the City's Open Data Portal (Ex. 6), actual locations are not provided; only taxi zones. Ex. 7 and 8. Data disclosed under the Freedom of Information Law ("FOIL") is even more

---

[1] Exhibits referenced herein are annexed to the Declaration of Genan F. Zilkha dated March 23, 2026.

sparse and includes, at most, the trip start time. <u>See</u> Declaration of Latifah Williams dated March 19, 2026 ("Williams Dec.") ¶ 3.

In 2025, Plaintiffs Mayfair and Kensington applied to TLC for Base licenses so that they could begin dispatching FHVs through the Wheely platform. <u>See</u> Ex. 9 and 10. Mayfair's license application was approved in November 2025, while Kensington's was approved in February 2026. Soon after Kensington's license application was approved, Plaintiffs filed the instant Complaint ("Cmpl.") (ECF 1) challenging the FHV Trip Data Rule and the Driver Fatigue Rule (hereinafter collectively the "Rules") as, <u>inter alia</u>, violative of the First and Fourth Amendments to the United States Constitution and the Stored Communications Act ("SCA"). Plaintiffs also moved for a preliminary injunction enjoining TLC from enforcing these Rules which have been in place for in or around a decade. The Court has since merged Plaintiffs' motion for a preliminary injunction with one for a permanent injunction. <u>See</u> ECF 15. Plaintiffs are not entitled to the relief they request.

First, and as a preliminary matter, Mayfair is not legally operating in the City (and Kensington is not operating in the City at all) and therefore this dispute is neither ripe for judicial review nor do Plaintiffs have standing to bring this action. Second, Plaintiffs cannot succeed on the merits of their Fourth Amendment claim because such a claim requires, at minimum, a reasonable expectation of privacy in the trip records which Plaintiffs do not have. Plaintiffs forfeited this expectation of privacy by choosing to participate in the highly regulated FHV industry. Third, Plaintiffs cannot establish that the Rules are preempted by the SCA, in part, because Wheely has already obtained its users' consent to release trip records via its own Privacy Policy, which advises users that it may disclose "personal data to a third party such as a court or regulatory authority" in order to comply with local laws and regulations. (Ex. 11 at 03). Finally,

Plaintiffs cannot demonstrate that the Rules violate the First Amendment as they direct conduct, not speech, and even if they did implicate Plaintiffs' speech, at most it is commercial speech subject to lesser protection. Further any directed disclosure advances the laudable goals underlying the adoption of the Rules as detailed in their respective Statements of Basis and Purpose. Ex. 2 and 4. As a result, Plaintiffs' motion for a permanent injunction should be denied.

## STATEMENT OF RELEVANT FACTS

### I. The New York City Taxi and Limousine Commission

TLC is a commission, the "purposes of which shall be the continuance, further development and improvement of taxi and limousine service in the" City. New York City Charter ("Charter") § 2300. TLC powers and duties "include the regulation and supervision of the business and industry of transportation of persons by licensed vehicles for hire in the city…." Charter § 2303(a). As part of these powers and duties, TLC engages in the "formulation, promulgation and effectuation of rules and regulations reasonably designed to carry out the purposes, terms and provisions of [Charter Chapter 65]." Charter § 2303(b)(11). TLC oversees, inter alia, medallion taxis and FHVs, which are often characterized as "black cars." As relevant here, an FHV is a "motor Vehicle licensed [by TLC] to carry Passengers for-hire in the City…" 35 RCNY § 51-03. FHVs are dispatched by Bases. Id. The FHV industry is highly regulated, and FHV base owners, like Mayfair and Kensington, are required to comply with various TLC rules. See 35 RCNY § 59B, et seq.

### II. TLC's History of Data Reporting

Since 1997, TLC has required that Bases maintain certain trip information including the "date, the time, and the location of the passenger to be picked up" and that such information may be "inspected by [TLC] representatives during regular business hours." Ex. 1.

In 2014, TLC sought to amend 35 RCNY § 59B-19(a) – which contained the existing requirement that Bases maintain passenger pickup times and locations – to add the FHV Trip Data Rule and which required, <u>inter alia</u>, that this data be affirmatively sent to TLC. <u>See</u> Ex. 2 at DEF000825. The FHV Trip Data Rule was intended to address a variety of issues, such as identifying reckless drivers, allowing passengers to more easily lodge complaints about dangerous or abusive drivers, facilitate the recovery of property lost in FHVs, and provide TLC important data regarding the availability of FHVs and accessible FHVs in certain areas. <u>Id</u>. at DEF000827. TLC held a hearing on the FHV Trip Data Rule, accepted oral and written testimony, and eventually adopted the FHV Trip Data Rule which took effect on December 31, 2014. <u>See</u> Ex. 3.

In July 2016, TLC promulgated a rule limiting the number of hours TLC-licensed drivers could work in order to curb fatigued driving.[2] After consulting with stakeholders, including Base owners, some of whom voluntarily provided TLC with data related to passenger drop-offs, TLC heard an amended version of this rule that included new reporting requirements mandating the transmission of time, date, and location of drop-offs in addition to pickups. Ex. 4 at DEF000856. This Fatigued Driver Rule took effect on March 15, 2017. Ex. 5. Base owners may transmit the required data to TLC through a secure File Transfer Protocol client, or by using the TLC Upload Portal ("TLC UP"). <u>See</u> Declaration of Amit Agarwal dated March 19, 2026 ¶ 3. Base owners choosing to upload data to TLC UP must first log into TLC UP using the Base's TLC Application or License Number, the Base's zip code, and the last five digits of the Base's Employer Identification Number. <u>Id</u>. Once TLC receives the data, regardless of how it is transmitted, it is stored in a secure database and cannot be downloaded by anyone except for authorized TLC

---

[2] <u>See</u> Notice of Promulgation of Rules, *available at,* http://nyc.gov/assets/tlc/downloads/pdf/newly_passed_rule_fatigued_driving.pdf (last visited Mar. 23, 2026).

personnel. Id. at ¶ 4. Even the Base owner cannot download the data they have uploaded to TLC UP. Id. An individual with the login credentials to a Base owner's TLC UP account may see that trip data has been uploaded by the account, when it was uploaded, and the titles of the files uploaded. Id.at ¶ 5. The actual data uploaded is not visible. Id.

Although Base owners are required to provide exact trip drop-off and pickup locations by intersection or street address, when that data is released on the City's Open Data portal (Ex. 6) only the "taxi zone" is disclosed. See Ex. 7 and 8. Taxi zones "are roughly based on NYC Department of City Planning's Neighborhood Tabulation Areas...and are meant to approximate neighborhoods..."[3] The information released in response to FOIL is even more limited – only the trip start time is provided; nothing about drop-off or pickup location or even drop-off time is included. Williams Dec. ¶ 3. The public does not have access and cannot access the exact drop-off and pickup locations.

### III.    Mayfair and Kensington's Base License Applications

Mayfair and Kensington both applied to be Bases. See Ex. 9 and 10. As part of their applications, Plaintiffs identified Wheely as their dispatch app. Id. This disclosure noted that an "app that contracts with licensed bases can only dispatch vehicles affiliated with those bases and must obey all TLC rules governing them." See Ex. 9 at 0047 and Ex. 10 at 0065. Mayfair's application showed that, at the time of its application, it had five affiliated vehicles – four electric vehicles and one wheelchair accessible vehicle. Ex. 9 at 00070. Both Mayfair and Kensington were granted Base licenses. Plaintiffs have represented that on March 2, 2026 Mayfair began dispatching FHVs in the City. See Ex. 12 at 5. Plaintiffs have not represented that Kensington is

---

[3]    See Taxi Zones, NYC Open Data, *available at* https://data.cityofnewyork.us/Transportation/NYC-Taxi-Zones/8meu-9t5y/about_data (last visited Mar. 23, 2026).

dispatching any FHVs in the City. Id. As of March 16, 2026, Mayfair only has four affiliated vehicles and, thus, may not legally operate in the City under 35 RCNY § 59B-15(b) and may be subject to suspension. Ex. 13.

**ARGUMENT**

I. **THERE IS NO JUSTICIABLE CONTROVERSY AND PLAINTIFFS LACK STANDING**

"To be justiciable, a cause of action must be ripe--it must present a real, substantial controversy, not a mere hypothetical question." Kurtz v. Verizon N.Y., Inc., 758 F.3d 506, 511 (2d Cir. 2014) (citations omitted). A claim is not ripe if it depends upon "contingent future events that may not occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Nat'l Org. for Marriage, Inc. v. Walsh, 714 F.3d 682, 687 (2d Cir. 2013) (cleaned up). Determining whether a case is ripe "generally requires us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005) (cleaned up). To establish standing, a plaintiff must demonstrate, inter alia, "an injury in fact—'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'" Tafuto v. Donald J. Trump for President, Inc., 827 F. App'x 112, 114 (2d Cir. 2020) (citations omitted).

Mayfair and Kensington applied to become Bases. Ex. 9 and 10. Yet, Kensington is not actually dispatching any vehicles (Ex. 12 at 5), and although in its application Mayfair initially showed that it had four affiliated electric vehicles and one wheelchair accessible vehicle (Ex. 9 at 0070) as of March 16, 2026 it had only four affiliated vehicles when ten (10) are required for operation (or five if one is a wheelchair accessible vehicle). See 35 RCNY § 59B-15(b). Ex.

13. Since neither Mayfair nor Kensington are legally operating, any harm from the Rules is "hypothetical" and Plaintiffs will not suffer any hardship should the Court withhold consideration. Plaintiffs also cannot demonstrate an injury-in-fact – i.e. one that "actual or imminent, not 'conjectural' or 'hypothetical'" <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992)(citations omitted). Thus, this motion fails for jurisdictional reasons at the outset.

## II.     PLAINTIFFS CANNOT ESTABLISH FOURTH AMENDMENT VIOLATION

The Fourth Amendment prohibits only unreasonable searches and seizures. <u>Horton v. California</u>, 496 U.S. 128, 133 (1990). Thus, an infringement of Fourth Amendment rights requires that "a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' . . . has been invaded by government action." <u>Smith v. Maryland</u>, 442 U.S. 735, 740 (1979). The inquiry embraces two questions. "The first is whether the individual, by his conduct has 'exhibited an actual (subjective) expectation of privacy'" (i.e., whether he "has shown that 'he seeks to preserve [something] as private'"). <u>United States v. Knotts</u>, 460 U.S. 276, 281 (1983) (quoting <u>Katz v. United States</u>, 389 U.S. 347, 351, 361 (1967)). "The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" <u>Id</u> (citations omitted). Where no legitimate expectation of privacy exists, there is no "search" within the meaning of the Fourth Amendment. <u>Id</u>. at 285.

### A.     Plaintiffs Have No Expectation of Privacy as the FHV Industry is Highly Regulated

Since Plaintiffs have chosen to participate in a heavily regulated industry, they have no expectation of privacy in their business records.[4] <u>See</u> <u>Statharos v. N.Y.C. Taxi & Limousine</u>

---

[4] Courts excuse the requirement for pre-compliance review when a search targets "an industry that is so 'closely regulated' that its participants have 'no reasonable expectation of privacy' in their books or inventory." <u>Hudson Shore Assocs. Ltd. P'ship v. New York</u>, 139 F.4th 99, 108 (2d Cir. 2025)(quoting <u>City of Los Angeles. v. Patel</u>, 576 U.S. 409, 424 (2015)). Therefore, contrary to

Comm'n, 198 F.3d 317, 324-25 (2d Cir. 1999) (finding that taxis are "pervasively regulated" by TLC and that those who choose to "enter the heavily regulated taxi industry" have a reduced "interest in confidentiality" in information related to their activities); El Nahal v. Yassky, 993 F. Supp. 2d 460, 468 (S.D.N.Y. 2014) ("[P]laintiff had a low privacy interest in the data collected through the [Taxicab & Livery Passenger Enhancement Programs] system [which collects taxi data], and the governmental intrusion was of a low degree. The data relate directly to plaintiff's work as a taxi driver, and regulations already required plaintiff to keep track of the information collected through the system.") (aff'd on other grounds 835 F.3d 248 (2d Cir. 2016)). "Adults who choose to participate in a heavily regulated industry, such as the taxicab industry, have a diminished expectation of privacy, particularly in information related to the goals of the industry regulation." Buliga v. N.Y.C. Taxi Limousine Comm'n, No. 07 Civ. 6507 (DLC), 2007 U.S. Dist. LEXIS 94024, at *8 (S.D.N.Y. Dec. 21, 2007)(aff'd 324 F. App'x 82, 82 (2d Cir. 2009)).

In Buliga, a taxi driver challenged TLC rules that required the installation in taxis of the Taxicab Technology System ("TTS") which, inter alia, collected automated trip data, as violative of the Fourth Amendment. The court granted TLC's motion to dismiss as the plaintiff had no expectation of privacy in data collected by TTS because "City taxicab drivers 'have reason to expect intrusions' upon their privacy insofar as it pertains to their work." Id. The same is true here. FHVs, just like taxis, provide for-hire vehicle transportation in the City. In fact, the number of trips effectuated by FHVs now dwarfs the number of trips conducted by taxis. FHVs and Bases

---

Plaintiffs' assertion, they are not entitled to pre-compliance review with regard to the reporting requirements at issue here. And even if they were, this action affords them such opportunity for judicial review prior to their obligation to report. Plaintiffs may also seek pre-compliance review by filing a special proceeding under Article 78 of the New York Civil Practice Law and Rules. See id. at 109.

are subject to a litany of regulations including, but not limited to, licensing, 35 RCNY § 59A-04-11, personal conduct (id. at § 59A-13), markings or advertisements on the vehicles (id. at § 59B-29), triannual inspections, (id. at § 59B-26), compliance with Workers Compensation laws (id. at § 59B-12), the zoning of the physical location of the FHV Base (id. at § 59B-15(a)), the conduct of Base personnel in the area surrounding the Base (id. at § 59B-18), and the vehicles used as FHVs (id. at § 59B-26-31, et seq.). Thus, Plaintiffs cannot seriously dispute that they have entered a highly regulated industry. Just as it previously did for taxicabs, TLC has determined that the submission of limited trip data is needed to ensure the proper and safe operation of the FHV industry.

Ignoring established precedent that specifically identifies TLC regulated entities as "highly regulated" and that holds that there is no privacy interest in collection of trip data, Plaintiffs instead cite to two inapposite cases for the proposition that "customer-facing businesses have an independent privacy interest in their customers' data," Patel v. City of L.A., 738 F.3d 1058 (9th Cir. 2013) (aff'd 576 U.S. 409 (2015)) and Airbnb, Inc. v. City of N.Y., 373 F. Supp. 3d 467 (S.D.N.Y. 2019). Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction ("Pls. Mem.") at 11 (ECF 10). Yet, the courts in both Patel and Airbnb specifically recognized that hotels and short-term rentals, respectively, were not heavily regulated at the time. See Patel, 738 F.3d at 1064 n.2; see also Airbnb, 373 F. Supp. at 485 (no "comparable history of close regulation of hospitality industries generally or of home-sharing services specifically.").

On the other hand, as noted above, FHVs and Bases are subject to numerous rules on virtually all aspects of their operation. Thus, while an individual checking into a hotel might anticipate some entitlement to privacy, "[a] person traveling in an automobile on public

9

thoroughfares has no reasonable expectation of privacy in his movements from one place to another." United States v. Jones, 565 U.S. 400, 403 (2012) (citations omitted).

Plaintiffs argue that "taxicabs are meaningfully different from FHVs like Wheely, as the Second Circuit and other courts have repeatedly recognized in the equal protection contexts." Pls. Mem. at 13. This is irrelevant. There is no argument that there are certain differences between FHVs and taxis that at times justify differential treatment in the equal protection context, for example that taxicabs are the only vehicles that may accept street hails. Pls. Mem. at 13. Still, both are heavily regulated by TLC which is a critical factor when conducting a Fourth Amendment privacy analysis. Thus, Plaintiffs' misguided attempt to import equal protection arguments into this Fourth Amendment discussion should be disregarded.[5]

Finally, although Plaintiffs argue that FHVs "do *not* have a long history of data reporting requirements" (Pls. Mem. at 13; emphasis in original) this is untrue. Since *1997*, FHV base owners have been required to collect and maintain records of the date, time, and location of passenger pickups, and to make such records available to TLC for inspection. Ex. 1 at 399-300. Since December 31, 2014, FHVs have been required to regularly transmit this data to TLC. Ex. 3. Since 2017, the reported data must include passenger drop-off time and location. Ex. 5.

Plaintiffs argue that, before the FHV Trip Data Rule and Fatigued Driver Rule were adopted, "[FHV] base owners were required to collect the date, time, and pickup location of passenger rides, [but] there was no prescribed format or specificity for the data and bases were not

---

[5] Even if this Court were to credit Plaintiffs' equal protection arguments, the Rules were, among other things, intended to bridge a gap between taxis and FHVs. See Ex. 2 at DEF000826 ("Without a record of the trip, TLC does not have a way to fairly enforce against drivers across service types, which leaves a wide accountability gap between drivers of Yellow Taxis and drivers of FHVs."). Further, TLC currently issues a single license for drivers of both FHVs and taxicabs. See, generally, Chapter 80 of Title 35 of the RCNY.

required to submit such data to the TLC on a regular basis...Instead, the records were only required to be made available for inspection by the TLC upon request." Pls. Mem. at 13. This is a distinction without a difference. Base owners have had to make trip records available to TLC since 1997; the particulars of how that information is provided to TLC (in person inspection of written records versus csv files submitted through an online portal) is irrelevant.

    **B.**    **There is no Expectation of Privacy over the Location and Movement of Vehicles on a Public Road**

"[T]here is no Fourth Amendment protection accorded information about the location and movement of cars on public thoroughfares." <u>Buliga</u>, 2007 U.S. Dist. LEXIS 94024, at *7. <u>See also</u> <u>United States v. Knotts</u>, 460 U.S. 276, 281 (1983). Thus, Plaintiffs do not have any expectation of privacy in data collected under 35 RCNY § 59B-19(a).

The question of whether a rule that requires location reporting to the TLC violates the Fourth Amendment was previously addressed in <u>Alexandre v. N.Y.C. Taxi & Limousine Comm'n</u>, No. 07 Civ. 8175 (RMB), 2007 U.S. Dist. LEXIS 73642 (S.D.N.Y. Sep. 28, 2007). In <u>Alexandre</u>, taxi drivers brought a motion to enjoin TTS because, they claimed, TTS violated their Fourth Amendment rights. The Court denied the request for a preliminary injunction in part because

> [w]here, as in the taxicab context presented here, there is likely "no legitimate expectation of privacy," there is also "no search or seizure within the ambit of the Fourth Amendment." <u>"There is a diminished expectation of privacy in a vehicle because of its availability to public scrutiny."</u> . <u>"A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."</u> (Citations omitted; emphasis added).

Like the TTS data addressed in <u>Alexandre</u>, since the data collected under 35 RCNY § 59B-19(a) memorializes "traveling in an automobile on public thoroughfares," Plaintiffs have no expectation of privacy in this data for that reason as well.

**C.      Wheely's Privacy Policy and Terms and Conditions Allow it to Collect and Disclose Data to Regulatory Agencies**

Simply by using the Wheely mobile application, users consent to the disclosure of the information that TLC is seeking to obtain. <u>See</u> Cmpl. ¶ 32. And Wheely makes it clear that it will voluntarily turn over data to comply with certain legal obligations. Ex. 11 at 03. Since Wheely advises its customers that it is collecting, and may turn over, data to comply with local laws, "[t]he background presumption in our law is that the government may access voluntarily disclosed electronic data in the same way without implicating an individual's privacy interest." <u>United States v. Davis</u>, 109 F.4th 1320, 1329 (11th Cir. 2024). In the context of internet service providers, where subscribers (like Wheely customers) consent to the collection and disclosure of certain personal information to entities like law enforcement, courts have found that the subscriber had no expectation of privacy. <u>See</u> <u>United States v. Hart</u>, No. 08-CR-00109-C, 2009 U.S. Dist. LEXIS 72597, at *46 (W.D. Ky. July 28, 2009)("[T]he generic Yahoo! Privacy Policy that has been in effect since November 2006 clearly explains why a subscriber should have no expectation of privacy with respect to his account data.")

Wheely's Privacy Policy also affirmatively states that "pursuant to 35 R.C.N.Y. § 59B-21(g), Wheely currently is legally required to obtain your affirmative consent to Wheely providing this information to the TLC.... [Y]ou hereby agree that by using Wheely's service, you give such affirmative consent to Wheely to provide such information to the TLC." Ex. 11 at 05-06. Thus, even its own Privacy Policy makes it clear that Wheely's patrons have no expectation of privacy in their trip data.

**D.    Under the Third-Party Doctrine there is no Expectation of Privacy**

"[A] person has 'no legitimate expectation of privacy in information [she] voluntarily turns over to third parties.'" <u>United States v. Salman</u>, No. 24 Cr. 00206 (NCM), 2025 U.S. Dist. LEXIS 218278, at *14 (E.D.N.Y. Nov. 5, 2025) (quoting <u>Carpenter v. United States</u>, 585 U.S. 296, 308 (2018)). Thus, "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed." <u>United States v. Miller</u>, 425 U.S. 435, 443 (1976); <u>see also</u> <u>United States v. Ulbricht</u>, 858 F.3d 71, 97 (2d Cir. 2017).

Wheely claims that it is a "privacy-first FHV" and that "[p]assenger privacy is Wheely's key differentiator." Pls. Mem at 3. In arguing that the third-party doctrine does not apply, Plaintiffs state that "Wheely is a platform that does not voluntarily turn over its user geolocation data to third parties." Pls. Mem. at 12. However, the Wheely Privacy Policy makes it clear that it *will* voluntary turn over data to comply with laws. Indeed, Wheely's Privacy Policy specifically allows for the collection and disclosure of trip data to regulatory agencies – therefore Wheely cannot argue that its users, and by extension Wheely, have any expectation of privacy in the data collected. Ex. 11 at 03.

Plaintiffs attempt to distinguish this action from <u>Sanchez v. L.A. Dep't of Transp.</u>, 39 F.4th 548 (9th Cir. 2022) (Pls. Mem. at 12, fn. 1) and yet <u>Sanchez</u> is squarely on point. In <u>Sanchez</u>, the plaintiff challenged a Los Angeles ordinance that required e-scooter companies to obtain permits from the Los Angeles Department of Transportation ("LADOT") prior to operating. "As a condition of getting a permit, LADOT required e-scooter operators to provide vehicle location data through an application programming interface called Mobility Data Specification ("MDS")." <u>Id</u>. at 552. "MDS automatically compiles real-time data on each e-scooter's location

by collecting the start and end points and times of each ride taken." Id. Plaintiff challenged this ordinance as violative of his Fourth Amendment rights. The district court dismissed the action and the plaintiff appealed. In affirming the district court's decision, the Ninth Circuit held that the plaintiff had no legitimate expectation of privacy under the third-party doctrine because he "knowingly and voluntarily disclosed location data to the e-scooter operators." Id. at 559. Further, "before renting an e-scooter, Sanchez must agree to the operator's privacy policies. Lyft's privacy policies, for instance, a copy of which Sanchez attached to his complaint, expressly state that 'location data' will be collected, stored by the rental company, and shared with government authorities to 'comply with any applicable . . . local law or regulation.'" Similarly, here, by utilizing the Wheely app, both the drivers and passengers permit their location data to be shared with TLC.

Plaintiffs also cite to Azam v. D.C. Taxicab Comm'n, 46 F. Supp. 3d 38 (D.D.C. 2014) (Pls. Mem. at 12 fn. 1) in support of their argument that the third-party doctrine is inapplicable. Yet, Azam does not reference the third-party doctrine and, in any event, it undercuts any argument that Plaintiffs may have a protected privacy interest in location data. In Azam, Washington D.C. passed a law that required the installation of meter systems in taxicabs that would collect certain passenger data and transmit this data to the D.C. Taxicab Commission. The data included the "time and mileage of each trip;" the "time of pickup and drop-off of each trip;" and the "geospatially-recorded place of pickup and drop-off of each trip which may be generalized to census tract level[.]" The plaintiffs, who included taxicab operators and passengers, sued claiming, in part, that this law violated the Fourth Amendment. The D.C. District Court dismissed the case because "neither the taxicab drivers nor passengers have a reasonable expectation of privacy in the pick-up and drop-off data collected by the GPS tracking aspect of the" meter system. Id. at 50.

14

**E.      The Challenged Rules are Reasonable**

Contrary to Plaintiffs' assertion, the Rules do not transgress the Fourth Amendment's "reasonableness" requirement. Pls. Mem. at 12. Plaintiffs wrongfully compare the limited data they must report in compliance with 35 RCNY § 59B-19(a) (which includes drop-off/pick up time and location)[6] with the much broader disclosure requirements addressed in Airbnb. In Airbnb, the City sought extensive information, including, but not limited to, the address of the short-term rental, the name, address, phone number and email address of the host, whether the short-term rental involved the entire dwelling unit, and the total rent received by the service and transmitted to the host. Airbnb, 373 F. Supp. 3d at 481. That is not the case here.

As detailed in the Statement of Basis and Purpose for the FHV Trip Data Rule, "TLC needs to be able to identify the driver in each trip of one of its licensed vehicles, particularly if a vehicle is involved in a crash or if there is a service complaint against the driver." Ex. 2 at DEF000826. Thus, requiring reporting of information protects members of the general public who may be involved in a crash and "consumers who file complaints that a driver violated the law, such as by overcharging, driving recklessly, or failing to comply with TLC prohibitions on service refusals." Id. at DEF000827. Reporting also serves the greater good by allowing TLC to "to assist other agencies, such as the Department of Transportation, in developing comprehensive transportation policy." Id.

As for the Driver Fatigue Rule, that Statement of Basis and Purpose notes how that rule provides trip duration and length data and that "[m]any stakeholders, including FHV bases, argued that it would be more accurate to use trip duration to calculate driving hours." Ex. 4 at DEF000857. It further recognized that "[i]n the fall of 2016, several FHV bases voluntarily

---

[6] In the Complaint, Plaintiffs seem to only take issue with that part of the Rules as pertains to the time and location of pickups and drop offs. Cmpl. ¶ 58.

15

produced trip records that included both pickup and drop-off times, allowing TLC to calculate trip durations. TLC then analyzed both FHV and taxi trip records and determined that a calculation based on trip duration provides a more accurate way to identify drivers at risk of fatigue." Id. TLC found that this "method also makes it easier for drivers and bases to track driving hours, which will help them comply with the limits established in this proposed rule." Id. Finally, in addition to addressing driver fatigue, drop-off data "facilitate[s] investigating passenger complaints or complaints from a pedestrian or other motorist about unsafe driving, including for incidents alleged to have occurred during or between trips, by allowing TLC to determine the location of a vehicle at a particular time." Id. at DEF000858.

The Rules do not require the reporting of any route followed during the trip, any stops made during the trip, the name of the person taking the trip, etc. It does not require Wheely to provide a "replicate of its database of passenger movements each month...." Pls. Mem. at 15. Once again, Plaintiffs' reliance on Airbnb is misplaced as in that case, the information sought was voluminous and did, in fact, require the reporting of a "transaction report that effectively will replicate much of the platform's user database for all New York City rentals." Airbnb, 373 F. Supp. 3d at 481. Finally, contrary to the false allusions advanced by Plaintiffs in their Complaint and motion papers, TLC does not disclose actual pickup and drop-off locations on its website, via Open Data (Ex. 6), or in response to FOIL requests (Williams Dec.¶ 3), nor is there any way to reverse engineer the data that is disclosed publicly to identify a specific house, intersection, or person. As noted in the Williams Dec, in response to FOIL requests at most TLC discloses the trip start time.

Accordingly, Plaintiffs' Fourth Amendment claim fails and their request for injunctive relief should be denied.[7]

### III. THE STORED COMMUNICATIONS ACT DOES NOT PREEMPT THE CHALLENGED RULES

Under the SCA, the "provider of remote computing service [("RCS")] or electronic communication service [("ECS") (collectively, "covered service providers")] to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service...to any governmental entity." 18 U.S.C. § 2702(a)(3). Sections 2702 and 2703 of the SCA govern the disclosure of subscriber communications and records by covered service providers. See 18 U.S.C. §§ 2702-03. Section 2702, titled "[v]oluntary disclosure of customer communications or records," prohibits covered service providers from disclosing "a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity," except "as otherwise authorized in section 2703 . . . [or] with the lawful consent of the customer or subscriber . . . ." Id. § 2702(a),(c). Section 2703, titled "[r]equired disclosure of customer communications or records," provides that "[a] governmental entity may require a [covered service] provider . . . to disclose a record or other information pertaining to a subscriber to or customer of such service when the governmental entity," among other things, "has the consent of the subscriber or customer to such disclosure." Id. § 2703(c)(1)(C). If lawful consent is provided, then there is no need for Defendant to "furnish the requisite legal process." Pls. Mem. at 18.

Plaintiffs contend that the "SCA preempts any conflicting state or local law." Id. at 17. Therefore, according to Plaintiffs, the Rules "force FHVs like Wheely to disclose private user

---

[7] For the same reasons as discussed herein, Plaintiffs' claim under Article I § 12 of the New York State Constitution also fails. Moreover, "District courts in this circuit have consistently held that there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983." Hershey v. Goldstein, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013).

information to the government in direct violation of the SCA." <u>Id</u>. at 17. They are wrong. Where Congress has not expressly preempted state law or "entirely displaced state action in the area, state law is preempted to the extent that it actually conflicts with federal law." <u>Envtl. Encapsulating Corp. v. New York</u>, 855 F.2d 48, 53 (2d Cir. 1988). In considering a preemption claim, "the purpose of Congress is the ultimate touchstone," (<u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 747 (1985)), and preemption may not be found "unless that was the clear and manifest purpose of Congress," <u>Jones v. Rath Packing Co</u>., 430 U.S. 519, 525 (1977). For the reasons set forth below, Plaintiffs cannot establish that the SCA preempts the Rules.

As a preliminary matter, the Court must determine whether Wheely is a covered service provider.[8] The answer to this question depends on "'the provider's role with respect to a particular copy of a particular communication, rather than the provider's status in the abstract.'" <u>In re Application of the United States for an Order Pursuant to 18 U.S.C. 2705(b)</u>, 289 F. Supp. 3d 201, 208 (D.D.C. 2018) (quoting Orin S. Kerr, <u>A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It</u>, 72 Geo. Wash. L. Rev. 1208, 1215 (2004)). On its face, Wheely, which facilitates the dispatch of FHVs, does not necessarily satisfy the definition of covered service provider as it does not *need* to provide "computer storage or processing services" or "the ability to send or receive wire or electronic communications" (e.g., through internal messaging systems). 18 U.S.C. §§ 2510(15), 2711(1)-(2). While the Wheely mobile application allows for electronic communications, that is not integral to its function as a means to dispatch FHVs.

---

[8] Plaintiffs do not claim that Mayfair and Kensington are covered service providers under the SCA. <u>See</u> Cmpl. ¶ 95; Pls. Mem. at 17. Instead, Plaintiffs contend that "[t]he Location Reporting Rules, however, require Wheely to divulge user data without the legal process required by the SCA." Pls. Mem. at 18. However, it is Mayfair and Kensington, as base owners, who must comply with 35 RCNY § 59B-19(a); not Wheely.

Assuming, <u>arguendo</u>, Wheely is a covered service provider, the Rules *still* do not violate the SCA. The SCA prohibits an ECS provider "from divulging only the contents of a communication while in electronic storage by that service." <u>Crispin v. Christian Audigier, Inc.</u>, 717 F. Supp. 2d 965, 973 (C.D. Cal. 2010) (cleaned up). Meanwhile, an "RCS provider may not divulge the content of any communication received by electronic transmission that is carried or maintained on its service for a customer or subscriber solely for the purpose of providing storage or computer processing services to [the] subscriber or customer, if the provider is not authorized to access the contents of [the] communications for purposes of providing . . . services other than storage or computer processing." <u>Id</u>. (cleaned up). Neither class of communication is at issue with regards to the Rules, which do not require production of any communications, whatsoever. Further, while the "the burden is on the governmental entity to obtain consent" <u>Freedman v. Am. Online, Inc.</u>, 303 F. Supp. 2d 121, 129 (D. Conn. 2004) (Pls. Mem. at 19), nothing in the SCA prevents the covered service provider from obtaining consent to disclose information on behalf of the governmental entity. All that matters is that the governmental entity has the consent before seeking disclosure of the information at issue. There is nothing that prevents the City from "outsource[ing] its responsibility to obtain user consent in this matter" (Pls. Mem. at 19) and <u>Freedman</u> does not say otherwise.

Second, nothing about consent here is "compel[led.]" Pls. Mem. at 19. Wheely's own Privacy Policy, which "[b]y using Wheely's app and service, passenger agrees to" (Cmpl. ¶ 32) makes it clear that "<u>Wheely is subject to laws and regulations</u> in the countries in which we operate <u>which require us to collect and retain certain information</u> about the use of our services, including obligations to carry out anti-money laundering checks <u>or to disclose personal data to a third party such as a court or regulatory authority</u>." Ex. 11 at 04 (smphases added). In this section

19

of the Privacy Policy, Wheely is seeking blanket consent unrelated to any specific rule or law. <u>Airbnb</u> here is "on all fours." Pls. Mem. at 14. In <u>Airbnb</u> the Court found that the plaintiffs "*already* condition use of their services on hosts accepting privacy policies that, among other things, notify hosts that the information they provide may be disclosed to governmental authorities." <u>Airbnb</u>, 373 F. Supp. 3d at 496-7 (emphasis in original). The "Plaintiffs presumably do not mean to suggest that their own terms and conditions are invalid because users are coerced to accede to them." <u>Id</u>.

Consent given via privacy policy has been deemed sufficient for the purposes of the SCA. <u>See</u> <u>id</u>.; <u>In re Yahoo Mail Litig.</u>, 7 F. Supp. 3d 1016, 1029 (N.D. Cal. 2014) (finding user's explicit consent to Yahoo's interception of emails based on terms of service). Accordingly, Plaintiffs' SCA claim lacks all merit.

## IV. PLAINTIFFS CANNOT ESTABLISH VIOLATION OF FIRST AMENDMENT

The First Amendment to the United States Constitution states that "Congress shall make no law . . . abridging the freedom of speech . . . ." The Supreme Court has held that the Free Speech Clause "includes both the right to speak freely and the right to refrain from speaking at all." <u>Wooley v. Maynard</u>, 430 U.S. 705, 714 (1977). Plaintiffs argue that by requiring Wheely to obtain consent prior to producing the data, TLC is forcing Wheely to convey a message it does not want to speak. Pls. Mem. at 20. Plaintiffs are incorrect.[9]

---

[9] "[C]laims under the First Amendment to the U.S. Constitution and Article I § 8 of the New York State Constitution are subject to the same analysis." <u>Almontaser v. N.Y.C. Dep't of Educ.</u>, 2007 Civ. 10444 (SHS), 2009 U.S. Dist. LEXIS 84696, at *4 n.1 (S.D.N.Y. Sep. 1, 2009). Thus, for the same reasons set forth herein, Plaintiffs' claim under Article I § 8 of the New York State Constitution fails.

### A. The Challenged Rules Do Not Implicate the First Amendment

As noted in Point II(C) supra, Wheely's US Privacy Policy from February 2026, which is identical to the March 2025 Privacy Policy utilized in the UK and which predated Kensington and Mayfair's applications to become Bases, already contains language that satisfies the consent requirement contained in the challenged Rules. The Privacy Policy, "describes how [Wheely]… affiliates collect, process and protect …personal data" belonging to a "passenger or rider who requests, hires and/or receives a service through the Wheely app" and states that "Wheely is subject to laws and regulations in the countries in which we operate which require us to collect and retain certain information about the use of our services including obligations to… disclose personal data to a third party such as a court or regulatory authority." Ex. 11 at 03. Accordingly, Plaintiffs are not being "compelled" to do or say anything. Moreover, the requirement that consent be obtained from the customer, regulates conduct, not speech, and thus does not implicate the First Amendment.

When determining whether speech or conduct are implicated, courts "may consider the 'inevitable effect of a statute on its face,' as well as a statute's 'stated purpose.'" HomeAway.com v. City of Santa Monica, 918 F.3d 676, 685 (9th Cir. 2018)(quoting Sorrell v. IMS Health Inc., 564 U.S. 552, 565, (2011)). Where "the only inevitable effect, and the stated purpose of a statute is to regulate nonexpressive conduct, our inquiry is essentially complete." B & L Prods., Inc. v. Newsom, 104 F.4th 108, 116 (9th Cir. 2024)(cleaned up). The challenged reporting requirements "affect[] what [FHV Bases] must do -- [obtain consent] -- not what they may or may not say," and are thus outside the scope of the First Amendment. Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 60 (2006). While the Supreme Court has noted that First Amendment protections may extend "to conduct that is inherently expressive," (id. at 66), such expressive conduct is clearly not present. It is well-settled that regulations directed at

"commerce or conduct" do not implicate the First Amendment because they impose, at most, "incidental burdens on speech." Sorrell v. IMS Health Inc., 564 U.S. 552, 567 (2011); see also Uber Techs., Inc. v. City of Seattle, Nos. 25-228, 25-231, 2026 U.S. App. LEXIS 6456 (9th Cir. Mar. 4, 2026)(ordinance that required app-based delivery platforms to inform workers of company's deactivation policy regulated conduct, not speech, as it regulated a business agreement between two parties which did not contain a "significant expressive element" and did not prevent the delivery platform from "voic[ing] their displeasure with the Ordinance's standards, even while complying with them"). Indeed, "it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949). Plaintiffs' protestations to the contrary should therefore not be credited.

**B.      Assuming *Arguendo* the Challenged Reporting Requirement Compels Speech, it is Rationally Related to the Goals Underlying Their Adoption**

To the extent the challenged reporting requirements can be construed as compelling speech (which they do not), it is commercial speech (defined as "expression related solely to the economic interests of the speaker and its audience," or, alternatively, as speech "proposing a commercial transaction"). Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of N. Y., 447 U.S. 557, 560 (1980); see Pls. Mem. at 20. While non-misleading commercial speech is protected under the First Amendment, it is entitled to less extensive protection than other "constitutionally guaranteed expression." Central Hudson, 447 U.S. at 562. Generally, restrictions on commercial speech are subject to intermediate scrutiny and analyzed under the four-part test set forth in Central Hudson. See Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-4 (1995). However, both the Supreme Court and Second Circuit have found that statutes that require, rather than restrict,

commercial speech, receive an even more deferential standard of rational basis review. See Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 651 (1985); Nat'l Elec. Mfrs. Ass'n v. Sorrell, 272 F.3d 104, 114 (2d Cir. 2001).

A disclosure requirement withstands First Amendment rational basis review if there is a "rational connection between the purpose of a commercial disclosure requirement and the means employed to realize that purpose." Sorrell, 272 F.3d at 115. The government does not have to produce evidence or empirical data to sustain rationality' instead, it can rely upon "rational speculation." Lewis v. Thompson, 252 F.3d 567, 582 (2d Cir. 2001). Nor, for that matter, does the regulation have to eliminate all of the evils it was designed to ameliorate. See Sorrell, 272 F.3d at 115-16. In the instant case, the challenged reporting requirements easily satisfy the rational basis test as there is a reasonable relationship between the intended purposes of the rules, such as ameliorating reckless conduct that may endanger the public (Ex. 2 at DEF000827) and combatting driver fatigue (Ex. 4 at DEF000859), and the means employed to achieve those purposes.

Even assuming, arguendo, the Zauderer-Sorrell framework for rational basis review is not applicable, the challenged reporting requirements still satisfy intermediate scrutiny. Under this test, the commercial speech must concern lawful activity and not be misleading, the asserted governmental interest must be substantial, and the regulation must directly advance the governmental interest and not be more extensive than necessary to serve that interest. Central Hudson, 447 U.S. at 566. Here, the interests identified in the Statements of Basis and Purposes, (Ex. 2 at DEF000825-DEF000829 and 4 at DEF000856-DEF000859) that were formulated following public hearings at which testimony (Ex. 14 and Ex. 15) and evidence (Ex. 16 and Ex. 17) was accepted, including the review of trip records specifically provided by stakeholders on the driver fatigue issue, helped to direct the limited data points needed for TLC to effectively formulate

policy and to enforce its rules – all in furtherance of its mandate to ensure public safety in the for-hire sector.[10]

### V. PLAINTIFFS CANNOT SHOW IRREPARABLE HARM

The deprivation of a constitutional right may be sufficient for a finding of irreparable harm (Pls. Mem. at 22) *only* if "the constitutional deprivation is convincingly shown and that violation carries noncompensable damages…." <u>Donohue v. Mangano</u>, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012). Since Plaintiffs have failed to "convincingly show[]" a constitutional deprivation, they cannot automatically show that they have suffered an irreparable injury. Further, the privacy concerns raised by Plaintiffs (i.e. with regards to reverse engineering data and pinpointing specific locations) (<u>see</u>, <u>e.g.</u>, Pls. Mem. at 6-8; Cmpl. ¶¶ 59-70) are illusory as TLC does not share this information on Open Data (Ex. 6) or in response to FOIL requests (<u>see</u> Williams Dec. ¶ 3). Finally, any argument that complying with the Rules will damage customer relations and good will is speculative at best and is not sufficient to demonstrate an irreparable injury. <u>See, e.g.</u>, <u>Helios & Matheson N. Am., Inc. v. Vegasoft Oy</u>, 07 Civ. 3600 (PAC), 2007 U.S. Dist. LEXIS 38206, at *6 (S.D.N.Y. May 24, 2007) (Irreparable harm must be both probable and imminent, not speculative or remote.").

---

[10] As an afterthought, in a footnote, Plaintiffs also contend that challenged reporting requirements "separately violate the First Amendment by requiring Wheely to disclose passenger data to the City." Pls. Mem. at 21 fn.2. To support this contention, Plaintiffs cite to a decision currently on appeal to the Second Circuit, <u>DoorDash, Inc. v. City of New York</u>, 789 F. Supp. 3d 337, 353 (S.D.N.Y. 2025). At issue in <u>DoorDash</u> is a law that compels food-delivery apps to turn over their customer data, including names, addresses, phone numbers, and email addresses, to restaurants. The law at issue in that case does *not* involve the disclosure of data to the City, nor does it involve an acknowledged highly-regulated industry, as is the case here. It is thus inapposite.

## VI. THE BALANCE OF THE EQUITIES WEIGHS AGAINST GRANTING INJUNCTIVE RELIEF

Since Plaintiffs are seeking a permanent injunction, a Court must evaluate whether "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted[,] and the public interest would not be disserved by a permanent injunction." Algood Casters, Ltd. v. Caster Concepts, Inc., No. 20 Civ. 4623 (LJL), 2020 U.S. Dist. LEXIS 162532, at *6-7 (S.D.N.Y. Sep. 4, 2020) (cleaned up). The "court must 'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,' as well as 'the public consequences in employing the extraordinary remedy of injunction.'" Gallagher v. N.Y. State Bd. of Elections, 477 F. Supp. 3d 19, 49 (S.D.N.Y. 2020) (citations omitted).

Here, the balance of the equities clearly favors Defendant. Plaintiffs are challenging rules that have been in place (and have gone unchallenged) for in or around 10 years. The for-hire transportation industry in the City is heavily regulated for a reason. The limited trip data FHV Bases have been required to produce for years helps to ensure the efficient and safe operation of an industry that conducts hundreds of thousands of trips every week in the City. Accordingly, the Rules should remain in place and undisturbed.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for permanent injunctive relief.

Dated: New York, New York
      March 23, 2026

STEVEN BANKS
Corporation Counsel of the City of New York
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-2212
gzilkha@law.nyc.gov

By: _____

Genan F. Zilkha
Gregory B. O'Brien
*Assistant Corporation Counsels*