UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WHEELY USA, INC.,
MAYFAIR-NY LLC, and
KENSINGTON-NY LLC,

        *Plaintiffs*,

        v.

THE CITY OF NEW YORK,

        *Defendant*.

1:26-cv-01057 (CM)

## **PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR INJUNCTIVE RELIEF**

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Alexander C. Drylewski
Lara A. Flath
Jacob G. Lefkowitz
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Counsel for Plaintiffs Wheely USA, Inc., Mayfair-NY LLC, and Kensington-NY LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................1

I.    PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE..............................2

II.   THE RULES VIOLATE THE FOURTH AMENDMENT ...............................................2

      A.     The City's Reliance On the "Closely Regulated" Exception Lacks Merit..............2

      B.     The City's Reliance on the Third-Party Doctrine Misses the Mark........................4

            1.     FHVs have privacy interests independent of their users ..........................5

            2.     The City's taxi cases do not apply.............................................................5

      C.     The City's Reporting Regime is Unreasonable .....................................................6

III.   THE RULES VIOLATE THE FIRST AMENDMENT.......................................................8

IV.   THE RULES ARE PREEMPTED BY THE SCA.............................................................9

V.    WHEELY HAS SATISFIED THE OTHER INJUNCTION FACTORS ............................9

CONCLUSION.............................................................................................................10

**<u>TABLE OF AUTHORITIES</u>**

**CASES**

*Airbnb, Inc. v. City of New York*,
   373 F. Supp. 3d 467 (S.D.N.Y. 2019) ..................................................................5, 7

*Allen v. Koenigsmann*,
   700 F. Supp. 3d 110 (S.D.N.Y. 2023),
   *aff'd sub nom. Daniels v. Moores*, Nos. 24-30-pr et seq., 2025 WL 883035 (2d
   Cir. Mar. 21, 2025) .................................................................................................9

*Camara v. Municipal Court of San Francisco*,
   387 U.S. 523 (1967) ...............................................................................................2

*Carpenter v. United States*,
   585 U.S. 296 (2018) ................................................................................ 1, 6, 8, 10

*Cerame v. Slack*,
   123 F.4th 72 (2d Cir. 2024) ....................................................................................2

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015) .......................................................................................passim

*El-Nahal v. Yassky*,
   993 F. Supp. 2d 460 (S.D.N.Y. 2014), *aff'd*, 835 F.3d 248 (2d Cir. 2016).........6

*Hudson Shore Ass'n Ltd. Partnership v. New York*,
   139 F.4th 99 (2d Cir. 2025) .................................................................................3, 7

*Illinois Transportation Trade Ass'n. v. City of Chicago*,
   839 F.3d 594 (7th Cir. 2016) ..................................................................................6

*New York Progress & Protection PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013) ...................................................................................9

*New York v. Burger*,
   482 U.S. 691 (1987) ...............................................................................................4

*Patel v. City of Los Angeles*,
   738 F.3d 1058 (9th Cir. 2013) ................................................................................5

*People v. Commons West, LLC*,
   No. CV–23–1255, 2026 WL 616282 (3d Dep't Mar. 5, 2026) ..........................7

*Safelite Group, Inc. v. Jepsen*,
   764 F.3d 258 (2d Cir. 2014) ...................................................................................8

*Statharos v. New York City Taxi & Limo Commission,*
198 F.3d 317 (2d Cir. 1999) ...................................................................................6

*United States v. Caronia,*
703 F.3d 149 (2d Cir. 2012) ............................................................................... 8-9

*United States v. Gilliam,*
842 F.3d 801 (2d Cir. 2016) ...................................................................................9

*United States v. Jones,*
565 U.S. 400 (2012) .............................................................................................10

## REGULATIONS

35 RCNY § 59B, D .................................................................................................6

<u>**PRELIMINARY STATEMENT**</u>[1]

This case presents serious concerns about the City's compelled disclosure of vast quantities of FHV geolocation data without a warrant, subpoena, or judicial review. Since the Rules went into effect, the Supreme Court has come to recognize that location data is particularly sensitive, providing "an intimate window into a person's life, revealing not only his particular movements, but through them his 'familial, political, professional, religious, and sexual associations." *Carpenter v. United States*, 585 U.S. 296, 311 (2018). And recent technological advancements have made privacy concerns about this data even more acute.[2] Yet, every month, the TLC imposes on FHVs an unceasing mandate to turn over troves of data revealing the "whole of [passengers'] physical movements," in violation of the Fourth Amendment. *Id.* at 310.

The City does not dispute the sensitivity of this data (nor could it). Rather, its defense rests on its contention that the FHV industry is "closely regulated," and thus FHVs forfeit any expectation of privacy in their records. But the "closely regulated" exception is extremely narrow and has been reserved for only a few, "intrinsically dangerous" industries. *City of L.A. v. Patel*, 576 U.S. 409, 424 n.5 (2015). The City does not—and cannot—argue that the FHV industry is "intrinsically dangerous," and *no court* has ever held that it fits within this exception. *Id.* Nor can the City rely on a handful of outdated taxi cases involving the privacy rights of taxi drivers in their location data. FHVs like Wheely have an independent privacy interest in their user data and, unlike taxi drivers on public roads, do not voluntarily disclose that data to third parties.

By forcing Plaintiffs to divulge their data every month, en masse and without the bare

---

[1] Unless otherwise indicated, all capitalized terms shall be ascribed the same meanings as in Plaintiffs' Opening Brief. (ECF 10 ("Br.").) All emphasis is added and all internal citations, quotation marks, and alterations are omitted.

[2] *See* Supplemental Declaration of Prof. Neil Richards ("Richards Supp. Decl.") ¶¶ 7-9.

minimum of legal process, the Rules violate the Constitution and should be permanently enjoined.

## I. PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE

The City is wrong that Plaintiffs lack standing. (Opp. 6.) In this Circuit, plaintiffs may file pre-enforcement challenges to regulations that create a "certainly impending" or "substantial risk" of future harm, and "'need not first expose [themselves] to liability before bringing suit to challenge the . . . constitutionality' of such regulations." *Cerame v. Slack*, 123 F.4th 72, 81 (2d Cir. 2024). As TLC-licensed bases since February 6, 2026, Plaintiffs "are required to comply with various TLC rules," including the Rules. (Opp. 3.) Thus, regardless of whether they are "legally operating" (*id.* 7), Plaintiffs face imminent enforcement of the Rules, which require them to disclose user location data or incur fines and suspensions. Plaintiffs' constitutional injury is "certainly impending" and establishes standing. *Cerame*, 123 F.4th at 81.

## II. THE RULES VIOLATE THE FOURTH AMENDMENT

The City does not question that the Rules implicate the Fourth Amendment, for good reason: its protections extend to business records and its restrictions apply to "administrative searches," which are "significant intrusions upon the interests protected by the Fourth Amendment[.]" *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 534 (1967). The City argues instead that FHVs lack a privacy interest because (1) they operate in a "closely regulated industry," and (2) taxi drivers and passengers have diminished privacy interests. Both arguments fail.

### A. The City's Reliance on the "Closely Regulated" Exception Lacks Merit

The "closely regulated" doctrine "has always been a narrow exception" to the rule that administrative searches must provide for precompliance review. *Patel*, 576 U.S. at 424. In *Patel*, the Supreme Court refused to add the hotel industry to the list of four "closely regulated" industries (liquor, firearms, mining, and junkyards) because there was "nothing inherent in the operation of hotels [that] poses a clear and significant risk to the public welfare." *Id.* While hotels are subject

2

to numerous regulations and have a history of warrantless searches, the Court warned that classifying them as "closely regulated" on that basis would "swallow the rule." *Id.* at 425.

The City's attempt to add FHVs to the shortlist of "closely regulated" industries similarly fails. No court has held that the FHV industry falls within this exception, and none of the City's cases (Opp. 7-8) even considered—let alone held—as much.[3] Those outdated cases held that taxi drivers and passengers had a diminished expectation of privacy in their movements on public thoroughfares. As discussed below, that reasoning has no application here (*infra* pp. 5-6), and none of these cases suggest, much less hold, that FHVs have "*no* expectation of privacy in their business records," as the City contends. (Opp. 7.)

The City cites to a hodgepodge of FHV regulations involving licensing, driver conduct, vehicle markings and operability standards, and compliance with laws. (Opp. 9-10.) But, like the hotel regulations in *Patel*, these do not establish a "comprehensive scheme of regulation that distinguishes [FHVs] from numerous other businesses." *Patel*, 576 U.S. at 425. Rather, nearly all businesses in New York require a license or permit, just as many businesses are subject to general, industry-specific regulations—but that does not diminish, much less eliminate, the privacy interests of those businesses. And it can hardly be said that regulations establishing vehicle standards put FHVs "on notice" that their *user geolocation data* will be regularly seized by the TLC. *Id.*[4] Instead, they resemble the general rules and standards the Supreme Court has rejected because they would otherwise deem "'the entirety of American interstate commerce' to be closely

---

[3] Since *Patel*, the Second Circuit has not addressed whether a proposed industry falls within the "closely regulated" exception. In *Hudson Shore Ass'n Ltd. Partnership v. New York*, 139 F.4th 99, 109 (2d Cir. 2025), the Second Circuit expressly declined to address the issue.

[4] Of course, the City cannot rely on the Location Reporting Rules themselves as rendering FHVs "closely regulated." *See Patel*, 576 U.S. at 425 ("The City wisely refrains from arguing that [the challenged regulation] itself renders hotels closely regulated.").

regulated[.]" *Id.* ("If such general regulations were sufficient to invoke the closely regulated industry exception, it would be hard to imagine a type of business that would not qualify.").

Nor does the history of FHV regulation support the "closely regulated" exception. The City has been regulating FHVs since 1997 (Opp. 10); regulations for junkyards, by comparison, existed for at least 140 years. *New York v. Burger*, 482 U.S. 691 (1987). The 1997 regulations only required companies to "collect and maintain" records, including pickup (but not drop-off) data, and make them available for inspection. (Ex. 1.) The Rules, by contrast, require FHVs to automatically turn over vast electronic records of precise pickup and drop-off data, each month in perpetuity. This is not a "distinction[] without a difference" (Opp. 11); it proves there is no historical precedent for the Rules' recurring seizure of data. Critically, the City does not address the most relevant factor to the "closely regulated" exception: whether the industry "poses a clear and significant risk to the public welfare." *Id*. at 424. Nor could it—"unlike the industries that the Court has found to be closely regulated," FHVs, much like hotels, "are not intrinsically dangerous." *Id.* at 424 n.5.

Finally, even in a "closely regulated" industry (which FHVs are not), warrantless searches are permissible only where there is a "substantial government interest that informs the regulatory scheme" and the warrantless inspections "necessary" to further that scheme. *Id.* at 426. As discussed below, the City has not established a "substantial government interest," nor has it made any showing that the Rules are "necessary to further [the] regulatory scheme." (*Infra* pp. 7-8.)

### B. The City's Reliance on the Third-Party Doctrine Misses the Mark

The City suggests that FHVs cannot have a privacy interest because vehicle drivers and passengers have diminished privacy interests in their voluntarily-disclosed location data. (Opp. 7-14.) This argument relies on the reasoning of the third-party doctrine, which assumes a person has no privacy interest in information voluntarily exposed, and fails as a matter of law.

### 1. FHVs have privacy interests independent of their users

To start, the City ignores that FHVs have an independent privacy interest in their user data. (Br. 10-13); *Patel v. City of L.A.*, 738 F.3d 1058, 1062 (9th Cir. 2013) (hotels have independent interest in guest data); *Airbnb, Inc. v. City of N.Y.*, 373 F. Supp. 3d 467, 484 (S.D.N.Y. 2019) (home-sharing platforms "have privacy interests in their user-related records" even if their customers did not).[5] The City argues that Wheely forfeited this interest because its privacy policy says it "will voluntarily turn over data to comply with laws." (Opp. 12-13.) Not so. Wheely's policy says it will "share passenger data only in response to court-issued orders or warrants." (ECF 12-2 at 6.)[6] Regardless, agreeing to comply with laws, even unconstitutional ones, is not a voluntary act that relinquishes Wheely's privacy interests in its records. *Airbnb*, 373 F. Supp. 3d at 485.

### 2. The City's taxi cases do not apply

The Opposition relies on a handful of cases involving taxis (Opp. 7-14) that are inapposite. First, the plaintiffs were passengers and drivers who were deemed to have reduced expectations of privacy in their movements based on the reasoning of the third-party doctrine. But here, Wheely asserts its independent privacy interests in business records that it does not disclose to third parties; whether taxi drivers or passengers have an expectation of privacy is irrelevant. *Airbnb*, 373 F. Supp. 3d at 484.

---

[5] The City offers a declaration from a TLC FOIL officer who asserts that, "per TLC policy," she does not provide location data in FOIL responses. (ECF 36 ¶ 3.) This misses the mark because it: (1) does not address concerns with improper TLC intrusion and is no substitute for valid legal process under *Patel*; (2) does not address evidence that the TLC discloses trip data to other authorities (ECF 11-5); (3) is inconsistent with the actual "TLC policy" at issue, which does not prohibit the TLC from "provid[ing] the actual address, intersection, or coordinates" (Drylewski Supp. Decl. Ex. A); and (4) is contradicted by multiple instances where the TLC has published geolocation data under FOIL. (Br. 7-8.)

[6] The City appears to be quoting from Section 2 of the policy, which details when Wheely will *process* user data, including "to comply with our record retention legal obligations." (*Id.* 3.) Wheely's policy for disclosing user data is found in Section 4.

Second, the Supreme Court has called into doubt the legal basis underpinning the City's cases. In *Carpenter*—decided after the Rules were enacted—the Court held that cell phone users had a privacy interest in their location data even if it was disclosed to wireless carriers. 585 U.S. at 296. In doing so, the Court emphasized that location data provides a "detailed, encyclopedic, and effortlessly compiled" record of a person's movement, and that "seismic shifts in digital technology" expanded the scope and ease of location tracking. *Id.* at 313. While *Carpenter* involved cell phones, its emphasis on the perils of tracked location data strongly supports the notion that drivers and passengers have a reasonable expectation of privacy, even on public streets.

Finally, the City's own cases recognize that taxis have a unique status that sets them apart from FHVs in terms of privacy expectations. *Statharos v. N.Y.C. T.L.C*, 198 F.3d 317, 324 (2d Cir. 1999) (taxis "have a City-granted monopoly on providing a crucial service[.]"); *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 467 (S.D.N.Y. 2014) (taxis "are not truly private vehicles"). FHVs are privately owned, subject to far fewer regulations, and operate in a competitive private market. This is truer still for black car bases like Wheely that are not "high-volume," and thus subject to fewer regulations. *Compare* 35 RCNY § 59B *to* § 59D. FHVs are also fundamentally different in operation—they cannot accept street hails and require the passenger to pre-arrange trips that typically begin or end at home. *See Ill. Transp. Trade Ass'n v. City of Chicago*, 839 F.3d 594, 597-98 (7th Cir. 2016) (comparing taxis and FHVs to "cats" and "dogs" with different business models and regulatory treatments). These differences give rise to different privacy expectations.

### C. The City's Reporting Regime Is Unreasonable

The Rules themselves do not provide any venue to challenge the scope of disclosure before each monthly deadline, which is reason enough to invalidate them. *Patel*, 576 U.S. at 420. As though hesitant to make the argument at all, the City mentions in a footnote that *the instant*

*litigation* "affords [Wheely] such opportunity for judicial review." (Opp. 7 n.4.) Judge Engelmayer rejected this argument in *Airbnb*, 373 F. Supp. 3d at 494. In the same footnote, the City contends that Wheely could seek precompliance review by filing a special proceeding under Article 78. This too is wrong. Article 78 fails to provide precompliance review where, as here, the search regime imposes a recurring and automatic obligation to disclose records on pain of fines and suspensions. An FHV could file an Article 78 petition in January yet still face penalties and suspensions for failing to comply with the production obligation in February. No matter how expedited the proceedings, FHVs would be forced to file successive petitions before every monthly deadline to stave off ballooning fines and suspensions. This is not the precompliance review contemplated by *Patel. See People v. Commons W., LLC*, 2026 WL 616282, at *4 (3d Dep't Mar. 5, 2026) (Article 78 is "toothless" and incapable of affording precompliance review where the agency could suspend or financially penalize landlords immediately for failing to comply).[7]

The City also argues that the Rules are reasonable because they compel "limited" data as compared to *Airbnb*. (Opp. 15.) But the reasonableness of an administrative search turns on the opportunity for precompliance review. Regardless, the Rules seek extensive records, including the precise date, time, and location of passenger pickups and drop-offs of *every* trip. It is difficult to imagine a more expansive or intrusive search regime.

Finally, the City contends that the Rules are justified by the regulatory goals they purportedly serve. (Opp. 15-16.) But in discussing these goals, the City *does not mention geolocation data*. Instead, it asserts that *driver*-related data helps the TLC identify drivers involved in crashes or subject to complaints while "trip *duration* and *length* data," including "both pickup

---

[7] In *Hudson Shore*, 139 F.4th 99, by contrast, landlords could file an Article 78 petition in response to a discrete request "as soon as a demand for records is made, meaning that review [was] available before they 'fac[e][d] penalties for failing to comply.'" *Id.* at 110.

and drop-off *times*," provides "a more accurate way to identify drivers at risk of fatigue." (*Id.* at 16.) The City never connects the TLC's customer safety or anti-fatigue goals to actual trip-specific *location data*. Nor does the City provide a single fact to support its vague goal of customer safety, which courts have rejected as insufficient. *Carpenter*, 585 U.S. at 316-17; *Patel*, 576 U.S. at 427.[8] Wheely will continue to collect and retain user data—if the City needs to obtain any of that data for law enforcement, it can use constitutional means to do so.

## III.     THE RULES VIOLATE THE FIRST AMENDMENT

The Rules compel Wheely to tell its users that (i) they must consent to the disclosure of their geolocation data, and (ii) their use of the platform will constitute "consent" to that disclosure. The First Amendment forbids the City from mandating that Wheely communicate that message. The City argues that Wheely's existing privacy policy satisfies the consent requirement. (Opp. 21.) But the portions the City cites merely warn users that Wheely is obligated to collect and retain user data "to comply with our record *retention* legal obligations." In a separate section the City ignores, Wheely explains it will only *share* passenger data "in response to court-issued orders or warrants." (ECF 12-2 at 6.) The City next argues that the Rules regulate conduct, not speech. (Opp. 21.) But Wheely must obtain this consent through words—i.e., the prompt it drafted conditioning the use of its platform on users' consent to share their data. Finally, the City argues for rational basis review (*id.* 23) but ignores that it only applies to "disclosure requirements about a company's own products or services." *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 264 (2d Cir. 2014). The Rules compel speech beyond a description of Wheely's product or service, and require Wheely to endorse a viewpoint on privacy. Thus, it must surpass intermediate scrutiny. *United States v. Caronia*, 703

---

[8]   This is because the actual data shows that customer complaints in the FHV industry (including High Volume FHVs) are a rare occurrence, and those that are determined to warrant a penalty are even more vanishingly small. (Chirkunov Supp. Decl. ¶ 5.)

F.3d 149, 163 (2d Cir. 2012). Under that standard, the Rules are unconstitutional because they cannot be said to "directly advance the governmental interest" when the City advances no connection between geolocation data and TLC's goals. (*Supra* pp. 7-8.) And even if the City could draw this connection, the Rules still do not survive because the City could accomplish those goals through "less speech-restrictive alternatives," such as subpoenas. *Caronia*, 703 F.3d at 167.[9]

## IV. THE RULES ARE PREEMPTED BY THE SCA

The Rules force Wheely to disclose private user information to the government in violation of the SCA. The City argues that "electronic communications" are not integral to Wheely's service (Opp. 18), but this unsupported statement is belied by the record (Chirkunov Decl. ¶ 5). While the City contends that the SCA only protects "the contents of a communication" (Opp. 19), the SCA in fact protects "a record *or other information*" relating to the user of a service, and "'other information' includes the *location* of a subscriber's cell phone." *United States v. Gilliam*, 842 F.3d 801, 803 (2d Cir. 2016). Finally, the City argues that Wheely's privacy policy supplies the user consent required by the SCA. (Opp. 19-20.) Again, this language merely notifies users that Wheely will retain their data, not disclose it to authorities without valid legal process. (*Supra* pp. 5, 8.)

## V. WHEELY HAS SATISFIED THE OTHER INJUNCTION FACTORS

Wheely has established success on its constitutional claims; as the City concedes, that is enough to establish irreparable harm. (Opp. 24); *Allen v. Koenigsmann*, 700 F. Supp. 3d 110, 141 (S.D.N.Y. 2023). Once a constitutional violation is found, the balance of equities and public interest weigh decisively in favor of a permanent injunction, as there is no "interest in the enforcement of an unconstitutional law." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). The City argues that the Rules "have been in place (and have gone unchallenged)

---

[9] For the same reasons the Rules violate the Fourth and First Amendments, they also violate Article I, Sections 12 and 8 of the New York State Constitution. (Br. 16, 21.)

for in or around 10 years." (Opp. 25.) First, the fact that unconstitutional rules have been in place for some time is no justification for their continuance. Second, the Rules have not gone "unchallenged"—they were met with widespread opposition from community groups, scholars, industry participants, and others when proposed, including then-Public Advocate James. (Br. of Amicus Curiae The Legal Aid Society (ECF 31), at *1-3.) Regardless, advancements in technology since the Rules went into effect have altered society's understanding of location data and the privacy risks it entails. (Richards Supp. Decl. ¶ 5.) This evolved understanding, reflected in Supreme Court jurisprudence since the Rules were enacted, further supports Plaintiffs' relief. *See Carpenter*, 585 U.S. at 313; *see also United States v. Jones*, 565 U.S. 400, 417 (2012) (Sotomayor, J., concurring) (Fourth Amendment issues should be reconsidered in light of changing privacy expectations in "the digital age[.]"); Amicus Br. of The Legal Aid Society (ECF 31) at *2; Amicus Br. of S.T.O.P. (ECF 32), at *15-18, 21-22.

*   *   *

Given its operations in New York, Wheely is continuing to collect and retain the geolocation data of its users. Unless the Rules are enjoined, Wheely will be required to turn over that data beginning on April 30. Wheely will meet and confer with Defendant and be prepared to address at the April 20 hearing whether a temporary stay of enforcement or other provisional relief may be warranted while the Court considers its claim for injunctive relief.

## CONCLUSION

The Court should grant Plaintiffs' request for a permanent injunction.

Dated:  New York, New York
      April 1, 2026

Respectfully submitted,

 /s/ Alexander C. Drylewski
Alexander C. Drylewski
Lara A. Flath
Jacob G. Lefkowitz
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Alexander.Drylewski@skadden.com
Lara.Flath@skadden.com
Jacob.Lefkowitz@skadden.com


*Counsel for Plaintiffs Wheely USA, Inc.,
Mayfair-NY LLC, and Kensington-NY
LLC*